IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:26-cr-63-ECM |
| | ) | [WO] |
| LEQUINTIN SAUVAE TOWNSEND | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Defendant Lequintin Sauvae Townsend ("Townsend") is charged in a one-count indictment with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1).   Townsend moved to suppress all evidence recovered from a seizure that occurred on November 22, 2025, including the firearm, ammunition, and his statements. (Doc. 14).   Townsend raised two arguments:  (1) the *Terry*[1] stop conducted by law enforcement was not supported by reasonable suspicion; and (2) Townsend's incriminating statements, particularly statements about his criminal history, were made without law enforcement giving the required *Miranda*[2] warnings. After conducting an evidentiary hearing, the Magistrate Judge recommended that the Court grant the motion to suppress, reasoning that law enforcement lacked reasonable suspicion to seize Townsend. (Doc. 25).   Because the conclusion that there was no reasonable suspicion was dispositive, the Recommendation does not address the *Miranda* issue.

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

On June 17, 2026, the Government timely filed objections to the Magistrate Judge's Recommendation. (Doc. 26).   Additionally, on August 4, 2026, the Court held a status conference to address the applicability of the "inevitable discovery" rule to Townsend's un-*Mirandized* statements.   Upon an independent and *de novo* review of the record, and for the following reasons, the Court concludes that the Government's objections are due to be sustained in part, and the motion to suppress is due to be denied.

## II.   STANDARD OF REVIEW

When a party objects to a Magistrate Judge's Report and Recommendation, the district court must review the disputed portions of the Recommendation *de novo*. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b)(3).   The district court "may accept, reject, or modify the recommendation; receive further evidence; or resubmit the matter to the magistrate judge with instructions." FED. R. CRIM. P. 59(b)(3).

*De novo* review requires that the district court independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990) (per curiam).   "[A]lthough *de novo* review does not require a new hearing of witness testimony, it does require independent consideration of factual issues based on the record." *Id.* (citation omitted).   If the magistrate judge made findings based on witness testimony, the district court must review the transcript or listen to a recording of the proceeding. *Id.*   The Court has conducted a complete and careful review of the record in this case, including the transcript of the suppression hearing, (doc. 21).   It has also reviewed *de novo* those portions of the Magistrate Judge's findings and

recommendations to which the Government objects. *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b)(3).

### III.    FACTUAL AND PROCEDURAL BACKGROUND

**A.    Facts**

The Magistrate Judge provided a recitation of the relevant facts in his Recommendation, and the Court adopts the Magistrate Judge's findings of fact, (*see* doc. 25 at 2–3).    For context, the Court summarizes the relevant facts leading to, and subsequent to, Townsend's seizure as follows:    At around 2:00 a.m. on November 25, 2025, Officer Caffery Rubin ("Officer Rubin") with the Montgomery Police Department ("MPD") detained a group of three Black males, which included Townsend, after MPD were notified by dispatch that a 911 caller had reported that three Black males wearing dark clothing, and who the caller described as suspicious, (*see* doc. 21 at 5:23–25, 30:16–19), were walking with guns near Governor's Square Apartments.[3]    After the officers encountered the three males, Townsend was eventually handcuffed and placed in the back of a police car.    Officer Donovan Boone ("Officer Boone") asked Townsend if he had been arrested before, and Townsend said, "Yes." (*See* doc. 21 at 60:19–20).    Officer Boone then read Townsend his *Miranda* rights.

The Court adds the following relevant facts:    The call for dispatch did not allege that the three Black males were committing a crime or that any criminal activity was afoot.

---

[3] Although Officer Rubin was first on the scene, backup MPD units joined him a couple of seconds later. (Doc. 21 at 8:19–21).

However, Officer Rubin testified that the call for dispatch mentioned three individuals "possibly canvassing the area of Governor's Square." (*Id.* at 14–19).   Officer Christopher James Green ("Officer Green") testified that police also receive a high volume of calls reporting "[s]uspicious persons possibly canvassing apartment complexes" in that area. (*Id.* at 30:4–8).   Officer Rubin and another responding MPD officer further testified that the area where Townsend was seized is a "high crime area" with frequent incidents involving firearms and where officers have been called to respond to robberies, car burglaries, domestic violence incidents, and shots fired. (*See id.* at 7:8–18, 30:2–13).   Additionally, Officer Rubin testified that the area around Governor's Square Apartments is "dark" and "[s]ome streetlights don't work." (*Id.* at 7:3–5).   Officer Green testified that in his experience, when the police get calls about "suspicious individuals wearing all black at night, it's mostly related to crime." (*Id.* at 28:1–3).   He further testified that three individuals walking around an apartment complex in that area and in the early morning was suspicious. (*Id.* at 37:22–38:2).

**B.    Relevant Procedural History**

At the suppression hearing, the Magistrate Judge *sua sponte* raised the issue of whether the inevitable discovery rule would apply to Townsend's incriminating statements about his criminal history.   In particular, the Magistrate Judge asked whether law enforcement would have inevitably discovered Townsend's criminal history—and thus his felon status—when they ran a criminal history check during the course of Townsend's detention.   In response, defense counsel appeared to agree with the Magistrate Judge that

4

the inevitable discovery rule would apply to Townsend's incriminating statements.[4]   At the August 4, 2026 status conference before the undersigned, defense counsel stated on the record that he conceded that the inevitable discovery rule applies to Townsend's incriminating statements.

## IV.  DISCUSSION

The Court divides its discussion into two parts.   First, the Court explains why, on this record and considering the totality of the circumstances, law enforcement had reasonable suspicion to detain Townsend.   Second, the Court explains why the applicability of the inevitable discovery rule permits the admission of Townsend's incriminating statements.

### A.    Reasonable Suspicion

The Government objects to the Recommendation's legal conclusion that law

---

[4] The relevant colloquy between the Magistrate Judge and defense counsel at the suppression hearing is as follows:

> THE COURT:   And I did want to ask, with respect to the *Miranda* issue, the – we've seen the body cam.   It's a very -- the conversation occurs very quickly.   The officer testified that they were able to pull up -- identifying information would not be self-incriminating, obviously.   Then if they could pull up his criminal history, is that just inevitable discovery, they would inevitably discover at the time that he was a convicted felon?

> MR. BELL:   So certainly they asked about identity.   Where they were unable to pull it up was originally the officer's testimony, and then it sounded like they – perhaps once he showed his Louisiana I.D. -- I wasn't clear from Officer Boone, but at least at some point later, after they had done further investigation, then they're able to pull that up.   *In terms of once they have his identity, then certainly they could find out what his criminal history is.   And so, of course, his answers to their questions at that point would be duplicative of what they could find.   So to answer the Court's question, yes, they would*. . . .

(Doc. 21 at 81:19–82:12 (emphasis added)).

enforcement officers lacked reasonable suspicion to conduct a *Terry* stop of Townsend. The Government relatedly contends that the Recommendation impermissibly "focused on one aspect of the stop" in recommending that the motion to suppress be granted. (Doc. 26 at 1). The Government emphasizes that the area where Townsend was seized is a "high crime area" where officers have been called to respond to report of various crimes. (*See* doc. 21 at 7:8–18, 30:2–13). The Government further contends that the late hour and the subjects' black clothing, considered together with their presence in a high crime area and their possession of firearms, supplies reasonable suspicion. (*See, e.g.*, *id.* at 27:12–18).

The Fourth Amendment allows a police officer to conduct a brief, investigatory stop if the officer has a reasonable suspicion "based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000); *see Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Courts examine "the totality of the circumstances to decide if the police had reasonable suspicion." *United States v. Bruce*, 977 F.3d 1112, 1117 (11th Cir. 2020). "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior," *Wardlow*, 528 U.S. at 125, and officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person,'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Moreover, the reasonable suspicion determination "need not rule out the possibility of innocent conduct," *id.* at 277 (citing

*Wardlow*, 528 U.S. at 125), because sometimes a series of acts may be innocent when viewed separately but when "taken together warrant[] further investigation," *United States v. Sokolow*, 490 U.S. 1, 9–10 (1989) (quoting *Terry*, 392 U.S. at 22).

Considering the totality of the circumstances, on this record the Court concludes that the officers had reasonable suspicion to detain Townsend.  A citizen called 911 to report, at around 2:00 a.m., three males who were suspicious, wearing dark clothing, and "possibly canvassing the area of Governor's Square," (doc. 21 at 30:14–19)—a dark, "high crime area" where officers have been called to respond to robberies, car burglaries, domestic violence incidents, and shots fired, (*see id.* at 7:8–18, 30:2–13).  Officers then saw three Black males wearing dark clothing near an apartment complex close to where the 911 caller had reported that the individuals were.  While mere presence in a "high crime area" is not sufficient to create reasonable suspicion, the fact that a stop occurred in a "high crime area" is a "relevant contextual consideration[] in [the] *Terry* analysis." *Wardlow*, 528 U.S. at 124.  Additionally, the 911 caller's observation, which was relayed to at least one of the officers, that the three males were possibly canvassing the area is a factor which supports a finding of reasonable suspicion under these circumstances, particularly given the history of calls of suspicious persons canvassing apartment complexes. *See Terry*, 392 U.S. at 5–6, 27–28 (concluding that officer had reasonable suspicion where he observed the defendant and his associates acting in a manner consistent with their contemplating a robbery, including the subjects' repeated "reconnaissance" of a store window).  Further, Officer Green testified that in his experience, when the police get

calls about "suspicious individuals wearing all black at night, it's mostly related to crime," and that three individuals walking around an apartment complex in dark clothing at that time of night was suspicious. (Doc. 21 at 28:1–3, 37:22–38:2).    The officer's "commonsense judgments and inferences about human behavior," based on his own experience, are relevant to the reasonable suspicion determination, *see Wardlow*, 528 U.S. at 125; *Arvizu*, 534 U.S. at 273, and the Court affords the officer's judgment significant weight in the analysis.   And based on the 911 caller's report that the three Black males had guns and the totality of the circumstances giving rise to reasonable suspicion, it was also reasonable for officers to inquire about the presence of guns and pat the subjects down to ensure officer safety. *See Terry*, 392 U.S. at 27–28.

The Court acknowledges that openly carrying a firearm is legal in Alabama, (*see* doc. 21 at 79:1-3 (the Government acknowledging as much at the suppression hearing)), and that firearm possession alone does not establish reasonable suspicion.   Here, however, the record establishes additional facts which support the presence of reasonable suspicion: Townsend's and his companions' presence late at night in a high crime area that receives frequent calls for firearm-related crimes, while donning dark clothing and having been observed "possibly canvassing the area," bolstered by an officer's testimony that individuals wearing all black at night is often crime-related and that the three individuals' presence was suspicious.   On this record, considering the totality of the circumstances, the officers had reasonable suspicion to detain Townsend.   Therefore, the Government's objections to the Magistrate Judge's legal conclusion are due to be sustained.

The Government additionally invokes Alabama Code § 13A-11-97(a)[5] in support of its position, arguing that it authorized Townsend's detention under these circumstances. However, the Government did not make this argument to the Magistrate Judge and instead raised it for the first time in its objections; consequently, the Court may in its discretion decline to consider it. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge"). Because Alabama Code § 13A-11-97(a) does not impact the Court's conclusion that the officers had reasonable suspicion to detain Townsend, the Court in its discretion declines to consider the Government's untimely argument. Consequently, this objection is due to be overruled.

**B.    Townsend's Incriminating Statements and the Inevitable Discovery Rule**

"The exclusionary rule bars admission of evidence resulting from a [constitutional] violation, unless an exception applies. One of the exceptions is when the unconstitutionally obtained evidence would ultimately have been discovered through lawful means had there been no constitutional violation"—the inevitable discovery rule or inevitable discovery exception. *United States v. Watkins*, 10 F.4th 1179, 1180 (11th Cir.

---

[5] Section 13A-11-97(a) states as follows:

> If at any time during an investigation a law enforcement officer acting in the lawful discharge of the officer's official duties has a reasonable suspicion that an individual is engaged or is about to be engaged in criminal conduct, or the officer determines that a reasonable person would believe that it is necessary for the protection of the officer, individual, or any other individual, the officer may temporarily take into custody the firearm that could be used to engage in criminal conduct or to cause harm to the officer, individual, or any other individual.

2021) (en banc) (citing *Nix v. Williams*, 467 U.S. 431, 442–44 (1984)).   For evidence to qualify for admission under the inevitable discovery rule, the government must establish, by a preponderance of the evidence, *id.* at 1181, that "the evidence in question would have been discovered by lawful means, and . . . that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct," *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004), *overruled on other grounds by Watkins*, 10 F.4th 1179; *see also United States v. Harris*, 635 F. App'x 760, 766–67 (11th Cir. 2015) (per curiam) (stating that the inevitable discovery rule has three requirements:   "(1) the evidence's discovery was inevitable, (2) by lawful means, and (3) the government was already actively pursuing the lawful alternative method of discovery").

Here, the Court need not, and does not, decide whether law enforcement violated Townsend's constitutional rights when they questioned him about his criminal history without first providing *Miranda* warnings.   Even if Townsend's constitutional rights were violated, Townsend concedes that the inevitable discovery rule applies.   Consequently, the exclusionary rule does not operate to bar the admission of Townsend's incriminating statements.

## V.   CONCLUSION

Because law enforcement had reasonable suspicion to detain Townsend, and because the inevitable discovery rule permits the admission of Townsend's incriminating, un-*Mirandized* statements, Townsend's motion to suppress is due to be denied.

Accordingly, it is

ORDERED as follows:

1.      The Government's objections (doc. 26) are OVERRULED IN PART and SUSTAINED IN PART as set forth herein;

2.      The Recommendation of the Magistrate Judge (doc. 25) is REJECTED; and

3.      Townsend's motion to suppress (doc. 14) is DENIED.

DONE this 4th day of August, 2026.

> _____/s/ Emily C. Marks_____
> EMILY C. MARKS
> UNITED STATES DISTRICT JUDGE